KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-7736
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>  Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>  )<br>GUILLERMO BARRETO-ORTIZ (1),  )<br>MAGDALENA MAULEON (2),  )<br>  )<br>  Defendants.  )<br>  )<br>  )<br>  )<br>  )<br>  )<br>  )<br>  )<br>  )<br>_____ ) | Criminal Case No. 07CR2882-BEN<br><br>Date:  December 3, 2007<br>Time:  2:00 p.m.<br><br>The Honorable Roger T. Benitez<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO**<br><br>**1)  COMPEL DISCOVERY AND PRESERVE EVIDENCE;**<br>**2)  SEVER DEFENDANTS;**<br>**3)  SUPPRESS STATEMENTS; AND**<br>**4)  GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendants' above-referenced Motions together with its Statement of Facts and Memorandum of Points and Authorities.  This Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On October 17, 2007, a federal grand jury in the Southern District of California returned a three-count Indictment, including criminal forfeiture, against Defendant GUILLERMO BARRETO-ORTIZ and Defendant MAGDALENA MAULEON (collectively "Defendants"). The Indictment charges Defendants with one count of conspiracy to manufacture 1,000 and more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and 846, one count of being an illegal alien in possession of a firearm and aiding and abetting, in violation of 18 U.S.C. § 922(g)(5), one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(A)(I) and (C)(I), aiding and abetting, in violation of 18 U.S.C. § 2, and criminal forfeiture in accordance with 21 U.S.C. § 853(a)(2), 18 U.S.C. § 924(d), and 28 U.S.C. § 2461©. On October 18, 2007, Defendant Mauleon was arraigned on the Indictment and entered a plea of not guilty. On October 30, 2007, Defendant Barreto-Ortiz was arraigned on the Indictment and entered a plea of not guilty. On November 9, 2007, Defendant Barreto-Ortiz filed his discovery motions. On November 20, 2007, Defendant Mauleon filed her discovery motions. The United States files the following response.

**II**

**STATEMENT OF FACTS**

**A.    SURVEILLANCE OF THE GROW SITE IN THE NATIONAL FORREST.**

In April 2007, Drug Enforcement ("DEA") agents received information regarding large outdoor marijuana grows located in the Cleveland National Forest. DEA agents identified at least four growing sites with marijuana clearly visible in two of the growing areas. DEA agents began conducting surveillance of a marijuana grow site near the "Tenaja Falls" in the Cleveland National Forrest.

Between May and July 2007, DEA agents conducted numerous surveillance of the marijuana grow site. DEA agents observed a 1996 black Toyota truck, bearing California license plate "6H15642" (hereinafter the "Black Toyota Truck"), parked in a turnout near the grow site. The Black Toyota Truck was registered to "Jose Mauleon" at 40922 De Luz Road in Fallbrook, California. Subsequent investigation revealed that Defendants reside at 40922 De Luz Road in Fallbrook, California. DEA agents observed Defendant Barreto-Ortiz driving the Black Toyota Truck and parking it near the grow

site. In fact, DEA agents observed the Black Toyota Truck parked in the area of the grow site on at least four occasions. DEA agents also observed the Black Toyota Truck parked at the residence located at 40922 De Luz Road in Fallbrook, California, which is the Defendants' residence.

During the surveillance of the grow site near "Tenaja Falls," DEA agents observed a dark green Toyota truck, bearing California license plate "4X98204" (hereinafter the "Green Toyota Truck") parked near the grow site. Subsequent investigation revealed that the Green Toyota Truck was registered to "Alvaro Ortiz Barreto" at 40922 De Luz Road, which is the residence of Defendants. On July 15, 2007, a San Diego County Deputy Sheriff conducted a traffic stop of the Green Toyota Truck and identified the driver as Defendant Barreto-Ortiz. Defendant Barreto-Ortiz provided the Deputy Sheriff with "40922 De Luz Road, Fallbrook, California" as his residence.

**B.    DISCOVERY OF THE GROW SITE NEAR DEFENDANTS' RESIDENCE.**

On June 16, 2007, DEA agents discovered another marijuana grow site in the 39000 block of De Luz Road, Fallbrook, California, which is near 40922 De Luz Road in Fallbrook, California, the known residence of Defendants. DEA agents harvested approximately 8,900 marijuana plants from the grow site. After DEA agents left the grow site, DEA agents observed Defendant Barreto-Ortiz drive past the agents in the Black Toyota Truck and park it near the grow site where DEA agents had just harvested 8,900 marijuana plants. As DEA agents were driving back toward the grow site, the Defendant Barreto-Ortiz passed them in the Black Toyota Truck. While DEA agents were searching the grow site, the Black Toyota Truck returned to the grow site. As the Black Toyota Truck drove slowly passed the grow site, DEA agents observed an unidentified Hispanic female driving the Black Toyota Truck, with an unidentified child in the passenger seat.

**C.    SEARCH OF DEFENDANTS' RESIDENCE.**

DEA agents obtained a State of California Search Warrant for 40922 De Luz Road, Fallbrook, California. On July 17, 2007, DEA agents executed the search warrant. Defendant Mauleon and four young children were inside the residence. Defendant Mauleon stated that she was the wife of Defendant Barreto-Ortiz and told DEA agents that he had left the residence earlier that morning. During a search of the house, DEA agents located a shotgun, three rifles, approximately 1.82 kg of processed marijuana packaged for sale, large amounts of ammunition and walkie-talkie radios. DEA agents searched the

trailer adjacent to the house and found approximately 39.92 kg of processed marijuana, a digital scale, a large quantity of ammunition, walkie-talkie radios with chargers, and marijuana seeds. DEA agents also found three large cages containing approximately 1,829 marijuana seedlings with visible root structures on the property.

While DEA agents were searching the residence, Defendants' juvenile son told DEA agents that he, his juvenile brothers, and his mother, Defendant Mauleon, assisted his father, Defendant Barreto-Ortiz, in the manicuring and packaging of the marijuana for sale. Additionally, the juvenile son said his mother, Defendant Mauleon, delivered marijuana to customers and several males would come to the house regularly to purchase marijuana.

### D.     ARREST OF DEFENDANT BARRETO-ORTIZ.

On July 17, 2007, DEA agents conducted surveillance of the marijuana grow site near the "Tenaja Falls" in the Cleveland National Forrest. During their surveillance, Defendant Barreto-Ortiz and co-conspirator, Consuelo Mauleon, arrived in the Green Toyota Truck on the road that led to the marijuana grow site. DEA agents searched the Green Toyota Truck and found a loaded handgun underneath the driver's seat as well as supplies intended for the workers at the marijuana grow site. Defendant Barreto-Ortiz possessed a small quantity of methamphetamine and a smoking pipe. During the search of the grow site, DEA agents seized approximately 5,548 marijuana plants. DEA agents also found, in the grow site, a receipt from Grangetto's Farm & Garden for an account in the name of "Guillermo Barreto." Defendant Barreto-Ortiz and Consuelo Mauleon were arrested.

DEA agents advised Defendant Barreto-Ortiz of his constitutional rights under Miranda. Defendant Barreto-Ortiz acknowledged that he understood his rights and agreed to waive his Miranda rights and speak to DEA agents without the presence of counsel. Defendant Barreto-Ortiz denied that the 5,548 marijuana plants seized at the grow site belonged to him. However, Defendant Barreto-Ortiz freely admitted that he was growing approximately 800 marijuana plants in the Cleveland National Forrest near the area where DEA agents had seized approximately 5,548 marijuana plants. Defendant Barreto-Ortiz said he planted his 800 marijuana plants in the Cleveland National Forrest approximately three to four months ago. DEA agents advised Defendant Barreto-Ortiz that they had seized marijuana from his residence, and Defendant Barreto-Ortiz denied possessing any marijuana at his residence.

### E.  ARREST OF DEFENDANT MAULEON.

DEA agents did not arrest Defendant Mauleon on July 17, 2007 during the execution of the search warrant at 40922 De Luz Road in Fallbrook, California. When DEA agents returned to the residence, they found the residence was no longer occupied by Defendant Mauleon and her children. After further investigation, DEA agents learned that Defendant Mauleon moved to Riverside, California. On September 26, 2007, DEA agents arrested Defendant Mauleon in Riverside, California. Defendant Mauleon signed a waiver and agreed to be transported by the DEA agents to the Southern District of California to make her first appearance before a magistrate judge.

### III

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES

### A.  DEFENDANTS' MOTION TO PRESERVE EVIDENCE/COMPEL DISCOVERY

As of the date of this Motion, the United States has produced 179 pages of discovery, as well as one CD and three DVDs containing photographic and video evidence. The United States will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. § 3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). At this point the United States has received no reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States respectfully requests the Court issue no orders compelling specific discovery by the United States at this time.

#### 1.  Defendants' Statements And Arrest Reports

The United States has turned over a number of investigative reports, including those which disclose the substance of Defendants' oral statements made in response to routine questioning by United States' law enforcement officers. If additional reports by United States' agents come to light, the United States will supplement its discovery. The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United

1  States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made
2  by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir.
3  1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require
4  the United States to produce statements by a defendant that it does not intend to use at trial. Moreover,
5  the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens,
6  767 F.2d 574, 584 (9th Cir. 1984).

7  The United States also objects to Defendants' request for an order for production of any rough
8  notes of United States' agents that may exist. Production of these notes, if any exist, is unnecessary
9  because they are not "statements" within the meaning of the Jencks Act unless they contain a
10 substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the
11 witness. See discussion infra Part III.A.10; see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir.
12 1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). The production of agents'
13 notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided
14 defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659
15 F.2d 932, 941 (9th Cir. 1981). In addition, the United States considers the rough notes of its agents to
16 be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

### 2.     **Information That May Result in a Lower Sentence**

18 Defendants claim that the United States must disclose information affecting her sentencing
19 guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The
20 United States respectfully contends that it has no such disclosure obligation under Brady.

21 The United States is not obligated under Brady to furnish a defendant with information which
22 he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of
23 disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the
24 defendant. In such case, the United States has not suppressed the evidence and consequently has no
25 Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

26 But even assuming Defendants do not already possess the information about factors which might
27 affect his or her guideline range, the United States would not be required to provide information bearing
28 on Defendants' mitigation of punishment until after Defendants' conviction or plea of guilty and prior

to his or her sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendants' demand for this information is unwarranted.

### 3. **Defendant's Prior Record**

Neither Defendant has a prior criminal record in the United States. However, if the United States later discovers that either Defendant has a criminal record, the United States will comply with its obligations under Fed. R. Crim. P. 16(a)(1)(D).

### 4. **Statements Relevant to the Defense**

The United States objects to the request for "any statement relevant to any possible defense or contention" as overbroad and not required by any discovery rule or Ninth Circuit precedent. In making this request, Defendants rely on United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982), overruled on other grounds by Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 1499 (1988). Defendants assert that Bailleauz interprets Fed. R. Crim. P. 16 as requiring the United States to disclose "any statement relevant to any possible defense or contention" that a defendant might assert. However, the Ninth Circuit holding was not so broad. In fact, the Ninth Circuit, interpreting Fed. R. Crim. P. 16, held: "We believe the Government should disclose any statement made by the defendant that may be relevant to any possible defense or contention that the defendant might assert." See Bailleaux, 685 F.2d at 1114 (emphasis added). Therefore, the United States will only disclose relevant statements made by a defendant pursuant to this request.

### 5. *Brady* **Material**

The United States has complied and will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

The United States will also comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Furthermore, impeachment evidence may constitute Brady

1  material "when the reliability of the witness may be determinative of a criminal defendant's guilt or
2  innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks
3  omitted). However, the United States will not produce rebuttal evidence in advance of trial. See United
4  States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 6. *Henthorn* Materials

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)).  If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

### 7. **Evidence Seized and Tangible Objects**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendants an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendants' defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belong to Defendants.

The United States need not, however, produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 8. **Request for Preservation of Evidence**

The United States will preserve all evidence pursuant to an order issued by this Court.  The United States objects to an overbroad request to preserve all physical evidence.  The United States does not oppose Defendants' request to preserve the marijuana seized in this case.

### 9. **Reports of Scientific Tests or Examinations**

The United States will provide Defendants with any scientific tests or examinations, in accordance with Fed. R. Crim. P. 16(a)(1)(F).

### 10.   Jencks Act Material

The United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify.

### 11.   Witness Addresses and Names of Witnesses Favorable to the Defendant

The United States objects to Defendants' request for witness addresses. None of the cases cited by Defendants, nor any rule of discovery, requires the United States to disclose witness addresses. There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call. Therefore, the United States will not comply with this request.

The United States will produce the names of witnesses it intends to call at trial. Defendants have already received access to the names of potential witnesses through the discovery sent to counsel. The United States is not aware of any individuals who were witnesses to Defendants' offense except certain law enforcement agents, Defendants' children, and Defendant Mauleon's sister and co-conspirator, Consuelo Mauleon. The names of these individuals have already been provided to Defendant.

### 12. **Expert Witness**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendants with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence ("Fed. R. Evid.").

### 13. **Evidence of Criminal Investigation of Any United States' Witness**

The United States objects to Defendants' overbroad request for evidence of criminal investigations by federal, state, or local authorities into prospective government witnesses. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendants to any and all evidence that a prospective government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession, custody or control. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. Beaver v. United States, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information. The United States also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other motivation of United States' trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959), when it files its trial memorandum.

### 14. *Giglio* **Information**

The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

### 15. Any Proposed 404(b) or 609 Evidence

The United States has complied and will continue to comply with its obligations under Fed. R. Evid. 404(b) and 609. Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendants with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure[.]").

### 16. Agreements Informants/Cooperating Witnesses

Defendants incorrectly assert that Roviaro v. United States, 353 U.S. 53 (1957), establishes a per se rule that the United States must disclose the identity and location of confidential informants used in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclose, at this point in the case.

As previously stated, the United States will provide Defendants with a list of all witnesses which it intends to call in its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986). Defendants, however, are not entitled to the production of addresses or phone numbers of possible witnesses for the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert denied, 419 U.S. 834 (1974). Defendants have already received access to the names of potential witnesses in this case in the investigative reports previously provided.

### 17.   **Residual Request**

The United States will comply with its discovery obligations in a timely manner.

### B.   **DEFENDANT MAULEON'S MOTION FOR SEVERANCE**

Defendant Mauleon seeks to sever her case from that of her co-defendant Barreto-Ortiz. Defendant Mauleon's motion lacks merit and should be denied. Defendant Mauleon advances four theories to justify her request that: (1) the duo may offer irreconcilable, mutually exclusive defenses; (2) she will be denied access to exculpatory evidence of the co-defendant; and (3) there may be Sixth Amendment issues under Bruton v. United States, 391 U.S. 123 (1968). None of these arguments justify the extreme remedy sought by Defendant Mauleon and this Court should deny her motion.

### 1.   **General Principles**

Federal Rule of Criminal Procedure 8(b) specifically provides for the joinder of defendants where they participated in the same series of acts or transactions constituting an offense or group of offenses.

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense of offenses. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count.

As indicated by the Statement of Facts above, the defendants in this case fall squarely within the purview of Rule 8(b).

The granting or denial of a motion for severance is governed by Federal Rule of Criminal Procedure 14. This rule provides, in pertinent part:

> If it appears that a defendant or the Government is prejudiced by a joinder of offenses or of defendants in an indictment or information, or by such joinder for trial together, the court may order separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires.

Accordingly, while joinder is generally favored because it promotes efficiency, see United States v. Tootick, 952 F.2d 1078, 1080 (9th Cir. 1991), Rule 14 provides that the trials may be severed when it is apparent that a joint trial would cause prejudice. The Supreme Court has held that "when defendants have been properly joined under Rule 8(b), a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would prejudice a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 536 (1993). Defendant Mauleon cannot demonstrate this serious risk.

### 2.     No Irreconcilable Mutually Antagonistic Defenses

Defendant Mauleon first contends that her mutually exclusive defense requires severance. This argument lacks merit. To justify severance on antagonistic defenses, Defendant Mauleon must show that the defenses are irreconcilable and mutually exclusive. United States v. Sherlock, 962 F.2d 1349, 1363 (9th Cir. 1992). Mutually exclusive defenses exist when acceptance of one defense necessarily precludes acquittal of the co-defendant. United States v. Tootick, 952 F.2d 1078, 1081 (9th Cir. 1991); United States v. Ramirez, 710 F.2d 535, 546 (9th Cir. 1983). Put another way, a defendant must show that the jury, in order to believe the "core" of one defense, must necessarily disbelieve the core of the other. Sherlock, 962 F.2d at 1363. Such truly "mutually exclusive" defenses are rare. Zafiro, 506 U.S. at 538, 113 S. Ct. at 937.

Mere inconsistency in defense positions or testimony is insufficient to find defenses mutually exclusive. Tootick, 952 F.2d at 1081. Similarly, the "mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating the other does not generate the kind of prejudice that mandates severance." Sherlock, 962 F.2d at 1363 (citations omitted); United States v. Voigt, 89 F.3d 1050, 1094 (3d Cir. 1996) ("finger-pointing and blame-shifting among co-conspirators," by themselves, are insufficient to show mutually exclusive defenses). There is nothing about the facts of this case that implicates truly mutually exclusive defenses, nor has Defendant Mauleon articulated any. Defendant Mauleon merely wishes to blame the offense on her co-defendant Barreto-Ortiz and argue that she did not know about the manufacturing of marijuana plants or the guns seized from the residence. This is a standard defense in two-defendant drug cases and one that does not mandate that the jury disbelieve the core of one defense in order to believe the other. As noted above, mere inconsistency in defense positions and hostility among defendants does not justify severance and Defendant Mauleon's motion on this ground must fail.

### 3.     Severance Is Not Required Due To Possible Denied Access To Co-defendant's Exculpatory Testimony

Defendant Mauleon next contends that her inability to obtain her co-defendant's exculpatory testimony requires severance. Once again Defendant Mauleon's argument is unpersuasive.

In considering Defendant Mauleon's claim that the co-defendant will provide exculpatory testimony, a district court must weigh a number of factors, among them, "the good faith of the

1  defendant's intent to have a co-defendant testify, the possible weight and credibility of the predicted

2  testimony, the probability that such testimony will materialize, [and] the economy of a joint trial."

3  United States v. Mariscal, 939 F.2d 884 (9th Cir. 1991). The Court held in Mariscal that the district

4  court must also consider the exculpatory nature of the desired testimony -- in other words, the degree

5  to which the asserted co-defendant testimony is exculpatory. Id.

6        As indicated by the court in United States v. Vigil, 561 F.2d 1316 (9th Cir. 1977), the defendant

7  must show that he would call the co-defendant at his severed trial; that the co-defendant would in fact

8  testify for him and that the co-defendant's testimony would be favorable to him. The Court in Mariscal

9  held that a moving defendant must show more than that the offered testimony would benefit him; he

10  must show that the co-defendant's testimony is "substantially exculpatory" in order to succeed. Id. at

11  9293. In that case, the Ninth Circuit determined that the district court did not abuse its discretion in

12  denying Mariscal's motion to sever because he did not present an affidavit of co-defendant swearing that

13  he would testify at a separate trial. See also United States v. Olano, 62 F.3d 1180 (9th Cir.

14  1995)(finding no evidence to support the claim that one of the co-defendants would have testified on

15  defendant's behalf).

16        Applying the analysis here, Defendant Mauleon asserts that if her trial were severed, her co-

17  defendant Barreto-Ortiz could be called to provide exculpatory testimony. Defendant Mauleon fails to

18  provide any support, via affidavit or otherwise, for her claim that her co-defendant Barreto-Ortiz would

19  provide "substantially exculpatory" testimony should their cases be severed. As Defendant Mauleon

20  cannot establish that her co-defendant Barreto-Ortiz would even testify in a severed trial, let alone

21  provide exculpatory details concerning the offense, Defendant Mauleon's argument is mere speculation

22  and her motion on that ground should be denied.

23          **4.**     ***Bruton* Does Not Mandate Severance**

24        Defendant Mauleon next relies on Bruton v. United States, 391 U.S. 123 (1968), asserting that

25  the co-defendants' statements warrant a severed trial. In Bruton, the Supreme Court held that the Sixth

26  Amendment right to confront adverse witnesses attaches if the non-testifying co-defendant makes a

27  confession that implicates the defendant and the Government introduces the confession into evidence

28  at their joint trial, even if the jury is instructed to consider the confession only against the co-defendant.

1  Bruton, 391 U.S. at 135-136. Courts have limited the Bruton principle only to statements that are
2  "powerfully incriminating" or "clearly inculpate the defendant." Richardson v. Marsh, 481 U.S. 200,
3  208 (1987); United States v. Enrique-Estrada, 999 F.2d 1355, 1359 (9th Cir. 1993); United States v.
4  Arambula-Ruiz, 987 F.2d 599, 605 (9th Cir. 1993) (citations omitted).

5       Here, Bruton plainly does not apply because the co-defendant's statements, namely denying
6  knowledge of the marijuana at the residence and the marijuana plants at the grow sites, are not
7  "powerfully incriminating" and do not "clearly inculpate the defendant." In Richardson, the Supreme
8  Court concluded that where the statement is not incriminating on its face, but becomes so only when
9  linked with evidence introduced later at trial, and where the statement has been redacted to eliminate
10 not only the defendant's name but also any reference to its existence, then a limiting jury instruction
11 adequately will protect the defendant's Confrontation Clause rights. Richardson, 481 U.S. at 211. In
12 other words, the Confrontation Clause is not violated when the admission is accompanied by a proper
13 limiting instruction, and when the statement is redacted to eliminate the defendant's name and any
14 reference to him. Richardson, 481 U.S. at 211; see also United States v. Yarbrough, 852 F.2d 1522,
15 1537 (9th Cir. 1988). Therefore, even assuming the co-defendant's statement could somehow, when
16 linked with other evidence, implicate Defendant Mauleon, it could easily be cured by a limiting
17 instruction and appropriate redactions. A severance is simply not justified on the basis of Bruton.

18     **C.**    **DEFENDANTS' MOTION TO SUPPRESS STATEMENTS**

19      Defendants move to suppress statements but have not submitted a declaration in accordance with
20 the local rules to allow the Government to respond to or the Court to rule on any factual dispute
21 regarding Defendants' advisal of Miranda rights, his or her waiver, or the voluntariness of his or her
22 statements. Because Defendants fail to allege a specific factual dispute, Defendants' motion to suppress
23 statements should be denied (without prejudice) without an evidentiary hearing.

24         **1.**    **Defendants Provided Knowing, Intelligent, and Voluntary Miranda Waiver**

25      A statement made in response to custodial interrogation is admissible under Miranda v. Arizona,
26 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence shows that the statement
27 was made after an advisement of Miranda rights, and was not elicited by improper coercion. See
28 Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (holding that preponderance of evidence standard

1  governs voluntariness and Miranda determinations and that valid waiver of Miranda rights should not
2  be found in the "absence of police overreaching").

3      A valid Miranda waiver depends on the totality of the circumstances, including the background,
4  experience, and conduct of the defendant. North Carolina v. Butler, 441 U.S. 369, 374-75 (1979). To
5  be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature
6  of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine,
7  475 U.S. 412, 421 (1986). The Government bears the burden of establishing the existence of a valid
8  Miranda waiver. North Carolina v. Butler, 441 U.S. at 373.

9      In assessing the validity of a defendant's Miranda waiver, courts analyze the totality of the
10 circumstances surrounding the interrogation. See Moran v. Burbine, 475 U.S. at 421. Factors
11 commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d 1070, 1074-
12 75 (9th Cir. 1998) (en banc) (valid waiver because the 17-year old defendant did not have trouble
13 understanding questions, gave coherent answers, and did not ask officers to notify parents), (2) the
14 defendant's familiarity with the criminal justice system (see United States v. Williams, 291 F.3d 1180,
15 1190 (9th Cir. 2002) (waiver valid in part because defendant was familiar with the criminal justice
16 system from past encounters), (3) the explicitness of the Miranda waiver (see United States v. Bernard
17 S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda waiver is "strong evidence that the waiver
18 is valid"); United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda
19 rights were read to defendant twice and defendant signed a written waiver), and (4) the time lapse
20 between the reading of the Miranda warnings and the interrogation or confession. See Guam v. Dela
21 Pena, 72 F.3d 767, 769-70 (9th Cir. 1995) (valid waiver despite 15-hour delay between Miranda
22 warnings and interview).

23     Here, Defendant Barreto-Ortiz was read his Miranda rights and verbally acknowledged that he
24 understood his Miranda rights. Thereafter, Defendant Barreto-Ortiz knowingly and intelligently waived
25 his rights, and agreed to speak with DEA agents without the presence of counsel. As in United States
26 v. Bernard S., 795 F.2d 749, 753, this is strong evidence that each Defendant's waiver was valid.
27 Additionally, there was no delay between the Miranda advisal and the interview; the interview followed
28 immediately after the advisal so Defendant Barreto-Ortiz's rights were fresh in his mind. According
   to Guam, 72 F.3d at 767, this also is strong evidence that Defendant Barreto-Ortiz's waiver was valid.

1       The inquiry into the voluntariness of a confession is the same as the inquiry into the voluntariness of a waiver of Miranda rights. See Derrick v. Peterson, 924 F.2d 813, 820 (9th Cir.1990). Courts look to the totality of the circumstances to determine whether the statements were "the product of free and deliberate choice rather than coercion or improper inducement." United States v. Doe, 155 F.3d 1070, 1074 (9th Cir. 1998) (en banc).

A confession is involuntary if "coerced either by physical intimidation or psychological pressure." United States v. Crawford, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting United States v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003)). In determining whether a defendant's confession was voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.'" Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) (citation omitted). Psychological coercion invokes no per se rule. United States v. Miller, 984 F.2d 1028, 1030 (9th Cir. 1993). Therefore, the Court must "consider the totality of the circumstances involved and their effect upon the will of the defendant." Id. at 1031 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973)).

In determining the issue of voluntariness, courts consider the five factors under 18 U.S.C. § 3501(b). United States v. Andaverde, 64 F.3d 1305, 1311 (9th Cir. 1995). These five factors include: (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he or she was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he or she was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his or her right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. 18 U.S.C. § 3501(b). All five statutory factors under 18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily made. See Andaverde, 64 F.3d at 1313.

Here, Defendant Barreto-Ortiz was interviewed immediately after he waived his Miranda rights. Hee knew, because DEA agents told him why he had been arrested. He was given the full Miranda advisal, including that any statement could be used against him, that he could remain silent, and that he could have an attorney present during the interview. The totality of these factors favor a finding of

1 voluntariness. There is nothing before the court to suggest coercion of any sort. Defendant Barreto-Ortiz's waiver was voluntary, and her will was not overborne by any statements or conduct of the interviewing agents, in light of the objective evidence of a routine, written Miranda advisal and signed waiver, with no threats, promises, or impropriety. See Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003).

### 2. **Defendants' Motion Should Be Denied Without An Evidentiary Hearing**

This Court can and should deny Defendants' motion to suppress statements without an evidentiary hearing because Defendants failed to allege a specific factual dispute. An evidentiary hearing is not required if a defendant's motion to suppress and supporting declarations or affidavits fail to allege a specific factual dispute. See United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (an evidentiary hearing is required "if the moving papers are definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of [material] fact . . . are at issue"). Where a defendant fails to provide a specific factual dispute of any material fact, the Court is not required to hold an evidentiary hearing. See United States v. Howell, 231 F.3d 616, 620-23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist"); United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (District Court is not required to hold an evidentiary hearing where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (finding that the motion to suppress was "akin to boilerplate motions that lay no factual foundation" and that the unsworn representations of counsel were "too indefinite and conjectural to require the government to respond"); United States v. Feola, 651 F. Supp. 1068, 1119 (S.D. N.Y. 1987), aff'd without decision, 875 F.2d 857 (2d Cir. 1989) (denying motion for Miranda hearing to determine admissibility of confession where there was "no real allegation of [] police coercion").

Defendants' motion failed to specifically identify the statements that he or she seeks to suppress or allege any specific factual or legal dispute regarding the inadmissibility of the statements. Defendants did not allege that the Government agents failed to advise Defendants of his or her Miranda rights, that the Miranda rights provided were somehow defective, or that the statements were the product

1 or coercion or trickery by Government agents.  In essence, Defendants' motion to suppress lacks
2 sufficient definiteness, clarity, and specificity to enable the United States to prepare for any motion to
3 suppress statements or the Court to make a reasoned finding of any impropriety.

       **D.**     **DEFENDANTS' MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

The United States does not oppose Defendant's request to file further motions if they are based on new discovery or other information not available to Defendants at the time of this motion hearing.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States requests the Court deny Defendant's Motions to Compel Discovery, Preserve Evidence, Sever Defendants, Suppress Statements and Leave to File Further Motions, unless unopposed.

DATED: November 27, 2007

                                                     Respectfully submitted,

                                                     KAREN P. HEWITT
                                                     United States Attorney

                                                     /s/ *Joseph J.M. Orabona*
                                                     JOSEPH J.M. ORABONA
                                                     Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>GUILLERMO BARRETO-ORTIZ (1),<br>MAGDALENA MAULEON (2),<br><br>    Defendants. | Criminal Case No. 07CR2882-BEN<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL DISCOVERY, PRESERVE EVIDENCE, SEVERANCE, SUPPRESS STATEMENTS AND GRANT LEAVE TO FILE FURTHER MOTIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Mark A. Chambers, Esq.
   345 West Ninth Avenue, Suite 200
   Escondido, California 92025-5055
   *Lead Attorney for Defendant Guillermo Barreto-Ortiz*

2. Robert E. Schroth, Sr., Esq.
   2044 First Avenue, Suite 200
   San Diego, California 92101
   *Lead Attorney for Defendant Magdalena Mauleon*

A hard copy is being sent to chambers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 27, 2007

                  /s/ **Joseph J.M. Orabona**
                  JOSEPH J.M. ORABONA
                  Assistant United States Attorney